1

2

3                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF WASHINGTON
4

ZACHARY FEATHERSTONE,              No.   1:CV-14-3084-SMJ
5
                        Plaintiff,
6                                             **ORDER GRANTING**
                                              **PRELIMINARY INJUNCTION**
7            v.

8   PACIFIC NORTHWEST
    UNIVERSITY OF HEALTH
    SCIENCES,
9
                        Defendant.
10

11           **I.    INTRODUCTION**

12           Before the Court is Plaintiff Zachary Featherstone's Motion for Preliminary

13   Injunctive Relief, ECF No. 3.  Plaintiff seeks a preliminary injunction permitting

14   him to begin attending medical school at Pacific Northwest University's (PNWU)

15   osteopathic medicine program on August 4, 2014, with sign language interpreters

16   and captioning services.  After hearing from counsel at the July 22, 2014 hearing,

17   and after thoroughly reviewing the file, pleadings, and declarations in this matter,

18   the Court is fully informed.  The Court finds Plaintiff established he is likely to

19   prove that he sought reasonable and necessary accommodations that do not alter

20   the nature of the educational program offered, the accommodations are available

ORDER - 1

to PNWU, and will not create an undue burden on the school. The patient safety and clinical-program concerns raised by PNWU are unfound based upon the growing trend of successful deaf health care professionals. While PNWU is a small new medical school, when they opened their doors to providing students an education, they, like other schools, have to obey legal obligations that come with providing those services. Accordingly, the Court grants the preliminary injunction, requiring PNWU to matriculate Plaintiff with his classmates on August 4, 2014, with the reasonable accommodations requested.

## II.    <u>BACKGROUND</u>

**A.    Factual Background**[1]

Plaintiff is seeking to become a doctor but is deaf and unable to lip-read in educational settings. For Plaintiff to interact in an educational setting, he requires sign language interpreters and captioning services. In 2012, Plaintiff applied for admission to PNWU, and later, after a timed interview with an integrated teamwork component in which Plaintiff used an interpreter, PNWU offered Plaintiff admission into its osteopathic medicine program which he accepted in February 2013. In March 2013, Plaintiff requested captioning for lectures and interpreting for more interactive settings such as labs and clinics. In the following months, Plaintiff and staff at PNWU worked on his accommodation requests.

---

[1] In developing this factual statement, the Court resolved factual disputes after reviewing the submitted evidence. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.,* 240 F.3d 832, 840 (9th Cir. 2001); *see also Dixon v. Vanderbilt*, 122 Fed. Appx. 694, 695-96 (5th Cir. 2004).

Plaintiff provided PNWU with information about Washington's Division of Vocational Rehabilitation (DVR), which provides funds for universities in Washington for the costs of auxiliary aids and services for deaf students.

On July 10, 2013, PNWU notified Plaintiff by letter that it needed more time to arrange for aids and services and proposed deferring his enrollment for a year, which Plaintiff agreed to by email on July 13, 2014.    During email exchanges between Plaintiff and PNWU discussing the details of a deferral, PNWU consistently made references to being potentially unable to financially afford the accommodations requested.  *See* ECF No. 21-3, Ex. 16 ("[A]t present the school is unable to bear the cost of the services you need"); ECF No. 21-3, Ex. 18 (recommending Plaintiff "consider another medical school that has greater financial resources than PNWU-COM").  While continuing to review Plaintiff's requests, an accommodation committee solely for Plaintiff was created and grew from seven to fourteen members.

On April 4, 2014, DVR informed PNWU that "[i]f they can't pay for the accommodations DVR can pay for them."  ECF No. 4-7 at 2.  On April 11, 2014, PNWU notified Plaintiff it was withdrawing his admission.  PNWU explained its decision citing concerns for patient safety in the clinical situations, anticipated compromised educational experiences for classmates, and an anticipated inability to meet the time requirements of performance examinations.  ECF No. 1-2.

**B.    Procedural Background**

On June 18, 2014, Plaintiff filed his Complaint alleging five claims 1) violation of Title III of the Americans with Disabilities Act, 2) violation of Section 504 of the Rehabilitation Act, 3) violation of the Washington Law Against Discrimination, 4) breach of contract, and 5) promissory estoppel. ECF No. 1. On June 20, 2014, Plaintiff moved for a preliminary injunction seeking to matriculate on August 4, 2014, as originally contemplated under his deferred admission. ECF No. 3.

### III.    PRELIMINARY INJUNCTIVE RELIEF

**A.    Legal Standard**

The Court has broad discretion to grant or deny a party's request for injunctive relief. *Half Moon Bay Fishermans' Marketing Assoc. v. Carlucci*, 857 F.2d 505, 507 (9th Cir. 1988). A preliminary injunction is an extraordinary remedy. *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 311–12 (1982). "While a prohibitory injunction preserves the status quo. . . a mandatory injunction goes well beyond simply maintaining the status quo. . .[and] is particularly disfavored." *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994). "When a mandatory preliminary injunction is requested, the district court should deny such relief unless the facts and law clearly favor the moving party." *Id*. The Court, however, is empowered to grant mandatory injunctions, especially when

prohibitory orders may be ineffective or inadequate. *Katie A., ex rel. Ludin v. Los Angeles County*, 481 F.3d 1150, 1156–57 (9th Cir. 2007). To obtain a preliminary injunction, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008). *See also Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–32 (9th Cir. 2011). Federal Rule of Civil Procedure 65(c) requires the party seeking the preliminary injunction to provide a bond in an amount the Court deems proper "for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." "Rule 65(c) invests the district court 'with discretion as to the amount of security required, *if any*.'" *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).

**B.    Discussion**

　　1.    <u>Success on the Merits</u>

To make out a prima facie case under either Plaintiff's ADA or Rehabilitation Act claims he must show that 1) he is disabled under the Act, 2) he is "otherwise qualified" to remain a student at the Medical School, i.e., he can meet the essential eligibility requirements of the school, with or without reasonable accommodation, 3) he was dismissed solely because of his disability,

and 4) the PNWU receives federal financial assistance (for the Rehabilitation Act claim), or is a public entity (for the ADA claim). *See Dempsey v. Ladd*, 840 F.2d 638, 640 (9th Cir. 1988); *Wong v. Regents of Univ. of Cal.*, 192 F.3d 807, 816 (9th Cir. 1999); *Armstrong v. Davis*, 275 F.3d 849, 862 n. 17 (9th Cir. 2001) ("The Rehabilitation Act is materially identical to and the model for the ADA, except that it is limited to programs that receive federal financial assistance.").

The first, third, and fourth factors are largely not in dispute. Plaintiff's hearing impairment clearly interferes with major life activities and PNWU's letter withdrawing Plaintiff's admission, ECF No. 1-2, clearly indicates PNWU's dismissal is because of Plaintiff's disability. PNWU admits that it receives federal financial assistance and is a public entity under the ADA. *See* ECF No. 26 at 1. Accordingly, the question of Plaintiff's likelihood of success on the ADA and Rehabilitation Act claims turn on whether the accommodations requested were reasonable and if Plaintiff was qualified to attend medical school with those accommodations.

a. *Qualified with Reasonable Accommodations*

The ADA defines a "qualified individual with a disability" as one who "meets the essential eligibility requirements . . . for participation in [a given] program[ ] provided by a public entity" "*with or without reasonable modifications* to rules, policies, or practices. . . ."  42 U.S.C. § 12131(2) (emphasis added);

*accord S.E. Comm'y Coll. v. Davis*, 442 U.S. 397, 406 (1979) (holding that under the Rehabilitation Act, an otherwise qualified individual is "one who is able to meet all of a program's requirements in spite of his handicap"). Regulations promulgated under Title III of the ADA require the provision of "appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities," 28 C.F.R. § 36.303(c)(1), and instruct places of public accommodation to "consult with individuals with disabilities whenever possible to determine what type of auxiliary aid is needed to ensure effective communication," *id.* § 36.303(c)(1)(ii). The regulations specifically provide that appropriate aids and services for deaf individuals include interpreters and transcription services. *Id.* § 36.303(b)(1).

In the school context, the implementing regulations of the Rehabilitation Act define an otherwise qualified individual as an individual who, although disabled, "meets the academic and technical standards requisite to admission or participation in the [school's] education program or activity." 34 C.F.R. § 104.3(k)(3). However, under Rehabilitation Act regulations, educational institutions are required to provide a disabled student with reasonable accommodations to ensure that the institution's requirements do not discriminate on the basis of the student's disability. *See* 34 C.F.R. § 104.44(a). Similarly, the ADA's implementing regulations require a public entity to "make reasonable

modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the services, program, or activity."   28 C.F.R. § 35.130(b)(7). However, the Supreme Court has made clear that an educational institution is not required to make fundamental or substantial modifications to its program or standards; it need only make reasonable ones. *See Alexander v. Choate*, 469 U.S. 287, 300 (1985).

Here, Plaintiff requests the use of interpreters for clinical settings and captioning services for classroom environments.   These are the exact type of services embodied in 28 C.F.R. § 36.303(b)(1).   As these services would allow Plaintiff to learn in the classroom and in the clinical settings, as well as, interact with fellow students and patients in the clinic setting, the Court finds it likely that with these accommodations Plaintiff would be qualified.   Additionally, it is clear that these types of services are quite common in the educational environment. *See Argenyi v. Creighton Univ.*, 703 F.3d 441, 444 (8th Cir. 2013) (acknowledging Seattle University used CART for lectures and interpreters for lab courses); *Argenyi v. Creighton Univ.*, 8:09CV341, 2014 WL 1838980 (D. Neb. May 8, 2014) (acknowledging jury found Creighton's failure to provide interpreters and CART services to a medical student discriminatory); Decl. of Josh Jones, ECF

No. 29-3 (acknowledging that Central Washington University provides captioning and interpreter services).  *See also,* Decl. of Christopher Moreland, ECF No. 4-8, (discussing successful use of interpreters in clinical environments); Decl. of Wendy Eastman, ECF No. 4-11 (same).  Accordingly, the Court finds it likely that Plaintiff could meet his burden of producing evidence that he is otherwise qualified with reasonable accommodations.

However, this does not end the analysis, as the burden shifts to the educational institution to produce evidence that the requested accommodations would require a fundamental or substantial modification of its program or present an undue hardship.  *See Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1047 (9th Cir. 1999).

### b.    *Program Modification and Undue Hardship*

PNWU asserts three main concerns with providing the requested accommodations 1) it would require revision of fundamental components of the curriculum, 2) the limited resources available in Yakima to provide interpreter services, and 3) concerns for patient safety.  However, as PNWU made clear at the July 22, 2014 hearing, the Dean of PNWU did not regard money as a concern. For the reasons that follow, the Court finds that PNWU's concerns lack merit.

//

/

ORDER - 9

*i.    Fundamental Modification of Programing*

PNWU maintains that the use of interpreters in lab scenarios, patient encounters, and clinical training would amount to a fundamental change. However, "mere[ ] speculat [ion] that a suggested accommodation is not feasible" falls short of the "reasonable accommodation" requirement. *Wong v. Regents of Univ. of Cal.*, 192 F.3d 807, 818 (9th Cir. 1999). Having reviewed the declaration in this matter, the Court finds that interpreter services are merely a means to translate communications and is a simultaneous process between converting English into American Sign Language. The interpreter is nothing more than a communication aid. Such aid, while adding another person in the room, is not altering the fact that Plaintiff will have to successfully complete the labs, communicate with patients, and complete the clinical program, just as his classmates would.

It is important to note that this case is not like other cases in which a disabled medical student was admitted, then failed to meet academic standards, and the resulting dismissal was upheld. *See e.g. Zukle*, 166 F.3d at 1045 (Student received a failing grade in the first two clinical rotations and was dismissed from the school for failure to meet academic standards); *Ellis v. Morehouse Sch. of Med.*, 925 F. Supp. 1529 (N.D. Ga. 1996) (The plaintiff's dismissal from the medical school for failing to pass two classes was not discriminatory.). To the

contrary, PNWU has declined to even provide Plaintiff with the *opportunity* to attend medical school. *See* 45 C.F.R. § 84.4(b)(2)(requiring entities receiving federal funding to furnish auxiliary aids which "afford handicapped persons equal *opportunity* to obtain the same result, to gain the same benefit, or to reach the same level of achievement" as others)(emphasis added).

Additionally, despite Plaintiff's assertion that he is not asking for more time to complete clinics or examinations, ECF No. 28, PNWU remains concerned that Plaintiff will not timely complete his examinations. On the issue of time, the Court has before it creditable sworn statements that additional time is not needed to timely complete exams when interpreters are used. *See e.g.* Decl. of Wendy Eastman, ECF No. 4-11 at 4. Therefore, PNWU's concern for time appears not only unfounded, but because additional time is not an accommodation Plaintiff seeks, the Court need not address whether such additional time would be permitted.

Accordingly, the Court finds PNWU's concerns that the requested accommodations would amount to a fundamental modification of its program not only lacks merit but is wholly speculative.

### ii.    Limited Resources in Yakima

PNWU also maintains the incredulous position that its location in Yakima distinguishes it from urban schools when it comes to the availability of resources

ORDER - 11

to provide interpreter services to Plaintiff.  While situational differences, even when slight, can alter the reasonableness of an accommodation,  *see Zukle v. Regents of Univ. of California*, 166 F.3d 1041, 1048 (9th Cir. 1999) ("[W]hat is reasonable in a particular situation may not be reasonable in a different situation- even if the situational differences are relatively slight.") (citations omitted), the Court finds nothing in the record to justify such a distinction.  First, there is nothing in logic or the law the prevents PNWU from going outside of Yakima to hire an interpreter who is willing to relocate.  Regardless, based on the present record, PNWU's belief that services are unavailable in Yakima seems misguided and uninformed.  Before the Court are sworn declarations that services can be available by August 4, 2014, to provide both captioning and interpreter services. *See* Decl. of Chandler Brimley, ECF No. 29-1 (noting availability of interpreter services); Decl. of Phil Hyssong, ECF No. 29-2 (CART services available by August 4, 2014); Decl. of Josh Jones, ECF No. 29-3 (discussing Central Washington University's use of interpreters including video remote interpreter services); Decl. of Kari Owen, ECF No. 31-1 at 2 (stating ASL Professionals has interpreters qualified to work in a medical education environment).  Accordingly, on the record before the Court, the necessary services appear readily available.

//

/

### iii.    Patient Safety

Finally, PNWU's concern for patient safety is attenuated with its requirements to provide for an education.   Any potential clinic in which its students could possibly be placed would have a legal obligation to accommodate not only disabled patients but also disabled employees.   *See, e.g., Liese v. Indian River Mem. Hosp. Dist.,* 701 F.3d 334, 342 (11th Cir. 2012) (discussing hospitals rehabilitation act obligations)*; Loeffler v. Staten Island Univ. Hosp.,* 582 F.3d 268, 274-75 (2d Cir. 2009) (same); 42 U.S.C. § 12181(7)(F)(applying the ADA to "professional office[s] of a health care provider").   Regardless, as demonstrated by the use of interpreters around the country to provide medical care to patients, as well as, accommodate the growing number of deaf medical care providers, interpreters can be used in even emergency situations without creating a danger. *See* Decl. of Wendy Eastman, ECF No. 4-11 at 4 (discussing successful and safe use of interpreters in emergency care settings and the growing number of deaf health care professionals).

//

//

//

//

/

ORDER **-** 13

1    Accordingly, the Court finds that PNWU has failed to establish that it is

2  likely to succeed on its claim that providing interpreter services to Plaintiff will

3  fundamentally alter the education environment or present an undue hardship to

4  PNWU.  Accordingly, the Court finds Plaintiff is likely to succeed on his ADA

5  and Rehabilitation Act claims.[2]

6         2.    <u>Irreparable Harm</u>

7    Second, to receive a preliminary injunction Plaintiff must demonstrate a

8  likelihood of irreparable harm.  While PNWU maintains that delay in admission

9  or emotional and psychological harms are insufficient to warrant preliminary

10  injunction, that position is contradicted by the Ninth Circuit.  The Ninth Circuit

11  has held that "emotional and psychological—and immediate . . . injury cannot be

12  adequately compensated for by a monetary award after trial."  *Chalk v. U.S. Dist.*

13  *Court Cent. Dist. of Cal.*, 840 F.2d 701, 710 (9th Cir. 1988) (noting that such non-

14  compensable injury was contemplated by Congress in enacting section 504).

15  Here, Plaintiff maintains he has been left "feeling depressed, worried, anxious,

16  and sleepless."  ECF No. 35 at 3.  However, more important is the harm to

17  Plaintiff in lost time in pursuing his chosen profession.  It is uncontested that

18  Plaintiff has been waiting to pursue his medical career for over a year already, and

19  would continue to be delayed in pursuing his chosen profession if not admitted to

20

---

[2] As the Court concludes a likelihood of success on two of Plaintiff's five claims, the Court need not address the likelihood of success on the remaining three claims.

ORDER - 14

PNWU.  The Ninth Circuit has concluded that irreparable harm can be shown "in the form of the loss of opportunity to pursue [ones] chosen profession." *Enyart v. Nat'l Conference of Bar Examiners, Inc.*, 630 F.3d 1153, 1165 (9th Cir. 2011). Accordingly, the Court finds Plaintiff has sufficiently demonstrated an irreparable harm if relief is not granted.

       3.    <u>Balance of Equalities</u>

Next, the Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Res. Def. Council, Inc.* 555 U.S. 7, 24 (2008).  As the Court discussed previously, interpreters and captioning services are available by August 4, 2014, and such services have been used by many other educational and medical schools and hospitals.  Accordingly, as the Court found above, PNWU has failed to establish it is likely to prove that the accommodations, if ordered, would present an undue hardship to PNWU.  Additionally, while PNWU may have to pay for the services, it also appears that sources of funding may be available outside of PNWU.  *See* ECF No. 4-7 at 2 (On April 4, 2014, DVR informed PNWU that "[i]f they can't pay for the accommodations DVR can pay for them.").  The Court, balancing the potential financial costs to PNWU against the irreparable harm presented by Plaintiff, finds the balance favors granting a preliminary injunction.

4.   <u>Public Interest</u>

Finally, Plaintiff must demonstrate that the preliminary injunction sought promotes the public interest.  Above, the Court found Plaintiff has already shown a likelihood of success on the merits of his ADA claim.  In enacting the ADA, Congress demonstrated its view that the public has an interest in ensuring the eradication of discrimination on the basis of disabilities.  42 U.S.C. § 12101(a)(9) (finding that "the continuing existence of unfair and unnecessary discrimination and prejudice . . . costs the United States billions of dollars in unnecessary expenses resulting from dependency and *nonproductivity*")(emphasis added). This public interest is served by requiring entities to take steps to "assure equality of opportunity" for people with disabilities. *Id.* § 12101(a)(8).  *See Enyart v. Nat'l Conference of Bar Examiners, Inc.*, 630 F.3d 1153, 1167 (9th Cir. 2011) (upholding district court's grant of preliminary instruction which found the enforcement of the ADA served the public interest).

Equal justice under law is more than an inscription atop the Supreme Court building, it is the ideal that Congress followed when enacting the ADA.  By granting this injunction, it is that ideal that this Court finds is in the public interest to protect.

//

/

### 5.   Mandatory Injunction is Appropriate in this Case

For the reasons discussed above, the Court finds any relief short of providing the requested injunction for Plaintiff in this case would be both ineffective and inadequate.  As the Court finds that the law and facts clearly favor Plaintiff and that the potential for irreparable harm cannot be remedied by a later award of damages, the Court also finds that Plaintiff has met his burden of demonstrating the need for a mandatory injunction.

### 6.   Bond Amount

Federal Rule of Civil Procedure 65(c) permits a court to grant preliminary injunctive relief "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Despite the seemingly mandatory language, "Rule 65(c) invests the district court 'with discretion as to the amount of security required, *if any*.'"  *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (quoting *Barahona–Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999)).  In particular, "[t]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct."  *Id*.  Additionally, a district court has the discretion to dispense with the security requirement where giving security would effectively deny access to judicial review.  *See Save Our Sonoran, Inc. v. Flowers*, 408 F.3d

1113, 1126 (9th Cir. 2005) (citation omitted).  Similarly, a district court may

waive the bond requirement where the plaintiff is indigent.  *V.L. v. Wagner*, 669 F.

Supp. 2d 1106, 1123 (N.D. Cal. 2009).  Here, Plaintiff is unlikely to have

sufficient funds to afford the bond, outside sources of funding are available to pay

for the interpreter and captioning services, and PNWU has repeatedly claimed

money is not an issue.  Accordingly, the Court finds waiver of the bond

requirement is proper as PNWU is not likely to be financially harmed by

enjoining its conduct and requiring Plaintiff to provide security, which in effect

would be requiring him to pay for this own services, would likely deny him access

to judicial review.

## IV.    <u>CONCLUSION</u>

Ultimately, the Court finds Plaintiff is likely to prove that he seeks

reasonable and necessary accommodations that do not alter the nature of the

educational program offered, the accommodations are available in Yakima, and

may be paid for by outside funding.  Based on the current record, the patient

safety and clinical-program concerns raised by PNWU are unfound based upon

the growing trend of successful deaf health care professionals.  Accordingly, the

Court grants the preliminary injunction, requiring PNWU to matriculate Plaintiff

with his classmates on August 4, 2014, with the reasonable accommodations

requested.

Accordingly, **IT IS HEREBY ORDERED**:

**1.**    Plaintiff's Motion for Preliminary Injunctive Relief, **ECF No. 3**, is **GRANTED.**

**2.**    Pacific Northwest University of Health Sciences shall immediately re-enroll Plaintiff into its 2014-2015 class at the College of Osteopathic Medicine.

**3.**    Pacific Northwest University of Health Sciences shall provide Plaintiff with the accommodation of necessary American Sign Language interpreter(s) and captioning services.

**4.**    Plaintiff shall cooperate fully with Pacific Northwest University of Health Sciences in arranging interpreter and captioning services necessary to assist him, and in arranging, and applying for, outside funding of those services.

**5.**    The Court waives the bond requirement of Federal Rule of Civil Procedure 65(c).

**IT IS SO ORDERED.**  The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 22nd day of July 2014.

SALVADOR MENDOZA, JR.
United States District Judge